**UNITED STATES, Appellant,**

v.

**Demetria MOSES et al., Appellees.**

**No. 7042.**

District of Columbia Court of Appeals.

Argued Aug. 28, 1973.

Decided May 22, 1975.

Rehearing en Banc Denied July 14, 1975.

---

**48**

Richard L. Beizer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Stuart M. Gerson, and Charles D. Pierce, Asst. U. S. Attys., were on the brief, for appellant.

Marcia D. Greenberger, Washington, D. C., argued on behalf of all appellees. With her on the brief on behalf of appellees Moses and Smith was Carl R. Fogelberg, Washington Lawyers Committee for Civil Rights, Washington, D. C. Also on the brief were Ed Wilhite, Washington, D. C., on behalf of appellee Perry, John W. Karr, Washington, D. C., on behalf of appellee Abernathy, and Leona Marx, Washington, D. C., on behalf of appellee Gaines.

Before KELLY, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Each appellee was charged with soliciting for prostitution in violation of D.C. Code 1973, § 22–2701.[1] Motions to dismiss the informations were filed alleging various constitutional infirmities in the statute, both as enacted and as enforced. A hearing was held in the cases of appellees Moses and Smith; there was no hearing on the other cases. Six months later, the trial court issued a 60-page opinion, ruling the statute unconstitutional and dismissing the informations. The government has appealed pursuant to D.C.Code 1973, § 23–104(c). We reverse.

## I. THE HEARING

The trial court characterized one of the defendants' arguments as follows: "They contend that the statute is discriminatorily enforced against them as women on the basis of their sex."[2] Its conclusion on this issue was stated as follows:

The practical application of D.C.Code § 22–2701 exclusively against the female offender constitutes a discrimination so unjustifiable as to violate due process notions of equal protection of the laws. These defendants, as members of the class against whom the law is discriminatorily enforced, may not constitutionally be singled out for prosecution on a basis so arbitrary as their sex. Thus, the court is presented with a situation in which a suspect classification is used as the basis for a determination entailing potential deprivation of liberty for engaging in conduct that is not properly the state's concern. In such a case, fairness demands proof of a compelling state interest; this demand remains unful-

---

1. The statute provides:
    It shall not be lawful for any person to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons sixteen years of age or over in the District of Columbia, for the purpose of prostitution, or any other immoral or lewd purpose, under a penalty of not more than $250 or imprisonment for not more than ninety days, or both.

2. The trial court concluded, after a lengthy discussion, that the term "any person" in the statute means any person, rather than "any woman", and hence is acceptably "sex-neutral".

filled. Accordingly, the informations must be dismissed as irreparably tainted with the invidious discrimination of the selective enforcement which produced them.

Those broad statements necessitate a brief description of the hearing which resulted in the record on which they purportedly are based. The hearing on the motions to dismiss was begun by the calling of the only witness to testify. He was Lieutenant George F. Richards, assigned to the Prostitution and Morals Division of the Metropolitan Police Department. The government asked if the witness was an expert in constitutional law. The court responded (although there had been no on-the-record identification of the witness' occupation): "No, he is not an expert witness in constitutional law. He is an expert in prostitution, perversion, pandering and general wrongdoing."

Lieutenant Richards apparently had nothing to do with the arrests of appellees Moses and Smith. The record is silent as to where or how the two women conducted themselves in such a way as to be charged with soliciting for prostitution.[3] In order to dispose of this appeal, we shall assume that in some public place (probably on a

street or sidewalk), each appellee offered to engage in sexual intercourse for a price. *See* United States v. Carson, D.C.App., 319 A.2d 329, 330 (1974).

The hearing transcript is 45 pages in length, and contains 1,097 lines. Of those, only 195 lines contain testimony by the sole witness (and many of those were simply expressions such as "yes, sir" in response to comments by the court or counsel). The majority of the transcript (65 per cent) is occupied by statements (and questions) by the trial judge.

We note this circumstance because the record does not provide any meaningful support for the trial court's conclusion of discriminatory enforcement. Lieutenant Richards testified: "Each police district has its own vice squad and it varies in number in the territory or the district and they do have a responsibility for prostitution law enforcement along with other vice type criminal offenses." He made it clear that he had no detailed personal knowledge as to how the various districts' vice squads function. Basically, the trial court relied upon its own observations as providing the evidentiary basis for most of the conclusions in its opinion.[4]

3. There are two separate soliciting cases pending against appellee Moses, and one against each of the other appellees.

4. The following exchange is illustrative. Defense counsel asked Lieutenant Richards whether female police officers were being used to arrest men who might be soliciting women to engage in prostitution. Then:
    A. I cannot really say because as I explained earlier the district[s] [have] their own vice operation[s]. I am not sure whether they are using it now. I know they did in the past. My division is not using that technique.
    THE COURT: I will tell you why they knocked that off. You got a lot of complaints that it wasn't fair, that you were arresting all the good people from the suburbs. What they really wanted to do was to arrest the nasty people, the prostitutes. They were the ones that were the cause of all of it on the theory all these good fellows from the

suburbs sort of came in here when they were supposed to be working in the office or out late with the fellows. If they happened to roll up the street, that created a lot of embarrassment. They were not the kind of people who were criminals. They did not want to get to them. After they did that, they stopped it and that was the word that filtered back. There were a lot of complaints about that. They were locking up the good people.
    [DEFENSE COUNSEL]: That is all I have.
    THE COURT: Did you hear any of those complaints?
    THE WITNESS: I did not hear any direct complaints, Your Honor, no. There was some opinion expressed that the heart of the problem was the actual commercial prostitute.
    THE COURT: Not the customer.
    THE WITNESS: Not the occasional customer as you might say.

A grand jury is free to act on the basis of its own knowledge as well as upon evidence presented to it. *See, e. g.,* United States v. Dionisio, 410 U.S. 1, 15, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). However, a trial court is not. "A judge's private knowledge is entitled to no weight at all." Wallington Home Owners Association v. Borough of Wallington, 130 N.J.Super. 461, 327 A.2d 669, 672, aff'd, 66 N.J. 30, 327 A.2d 657 (1974).

## II. THE RIGHT OF PRIVACY ISSUE

As we have noted, the record contains no information as to the specific conduct of the appellees beyond the fact that each was charged with soliciting for prostitution. Notwithstanding that fact, the trial court concluded "that § 22–2701 is invalid as an unconstitutional invasion of defendants' rights of privacy . . . . "

Such a conclusion was predicated upon arguments concerning women's "right to the use of their own bodies". It would, of course, be absurd to suggest that a woman who elects (or is induced) to occupy herself as a prostitute thereby forfeits her constitutional rights, including those of privacy. However, there is no basis for concluding that any such issue validly is presented in this case.

█ We are not confronted here with any adult's private, consensual sexual conduct. Appellees were arrested upon allegedly making solicitations of police officers for prostitution, with the solicitations presumably having been made in some public place. Whatever might have happened had appellees succeeded in their solicitations

That exchange provided the record basis for the following statements in the trial court's opinion:

The Vice Squad of the Third Police District —an autonomous unit unconnected with the Morals Division—did essay an experiment using policewomen as decoys who, upon being solicited for prostitution by male "johns," made arrests under § 2701. The experiment ceased abruptly. Its demise had nothing to do with a dearth of arrestees;

and engaged elsewhere in some private sexual act for a price is irrelevant. *See* United States v. Carson, *supra,* 319 A.2d at 331. In Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), the Supreme Court stated (at 65–66, 93 S.Ct. at 2639–2640):

Our prior decisions recognizing a right to privacy guaranteed by the Fourteenth Amendment included "only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. Nothing, however, in this Court's decisions intimates that there is any "fundamental" privacy right "implicit in the concept of ordered liberty" to watch obscene movies in places of public accommodation. [Citations omitted; *cf.* Stanley v. Georgia, 394 U.S. 557, 89 S. Ct. 1243, 22 L.Ed.2d 542 (1969).]

We conclude that the trial court erred in deciding that the statute proscribing soliciting for prostitution is unconstitutional for its allegedly impermissible infringement of appellees' rights to privacy. *See* Harris v. United States, D.C.App., 315 A.2d 569, 575 (1974); Morgan v. Detroit, 389 F.Supp. 922 (E.D.Mich. Feb. 24, 1975).

## III. THE FREE SPEECH ISSUE

In considering this aspect of the trial court's ruling, two concepts should be borne in mind. The first—and that which provides the only marginally plausible basis for the ruling—is that Congress chose not to make "prostitution" a criminal offense.[5]

on the contrary, the very success of the project signalled its end. The outcry of "respectable" gentlemen from the suburbs, sullied and embarrassed by their encounter with the law, soon reached the responsive ears of the police and the program was abandoned, never to be revived. * * *

5. It is unlawful to commit adultery, fornication, or sodomy. D.C.Code 1973, §§ 22–301, 22–1002, and 22–3502, respectively. Virtually

Rather, it sought to control the seemingly ineradicable business by prohibiting soliciting for prostitution. The second is that the act of soliciting for prostitution is *sui generis* when evaluated against the broad spectrum of freedom of speech cases. The great majority of First Amendment cases involve a true expression of ideas or beliefs, which a solicitation for prostitution is not. Nonetheless, we shall deal with the question in light of existing precedents, although the extent of their applicability is somewhat limited.

■ Proceeding basically from the proposition that prostitution per se is not unlawful, the trial court reasoned that a prostitute's offer to engage in a commercial sexual act must be protected speech. In support of such a conclusion, appellees rely in part upon our opinion in Riley v. United States, D.C.App., 298 A.2d 228 (1972), cert. denied, 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973). However, such reliance is misplaced.

*Riley* did not deal with prostitution, but rather with that portion of the statute which prohibits soliciting for "any other immoral or lewd purpose". The attack on that language's constitutionality was based upon assertions of overbreadth and vagueness, as well as upon the argument that the speech involved should be considered to be protected under the First Amendment. We sustained the statute against both of those challenges, recognizing that its applicability has been interpreted to be limited to solicitations to commit sodomy, which itself is a criminal offense, *Riley* had nothing to do with the prohibition against soliciting for prostitution (which manifestly is neither vague nor overly broad). *See also* District of Columbia v. Garcia, D.C.App., 335 A.2d 217 (1975).

The trial court held that the arrests of appellees for mere solicitation, *i.e.*, for "invit[ing], entic[ing], persuad[ing]," or "ad-

dress[ing] for the purpose of inviting, enticing, or persuading" a person for prostitution violated their rights to free speech. The trial court found that the charge against each appellee was for a "purely verbal" crime, which would be justified only upon a showing of a "compelling" or "subordinating" interest. *See* Bates v. Title Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); N.A.A.C.P. v. Alabama, 357 U.S. 449, 463, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The trial court made an extensive analysis of the asserted interests in regulating such verbal communications, and concluded that they are insufficient to justify criminalizing ·the speech. Appellees similarly take the position that the relevant societal interests are inadequate to justify the statute. The government, while not contesting the finding that appellees face prosecution for their speech, asserts the validity and strength of the various interests which led Congress to proscribe soliciting for prostitution. We need not involve ourselves in this judgmental dispute (which properly is the function of the legislature), for we conclude that appellees' alleged offers to perform sexual intercourse for a price are not within the bounds of First Amendment protection.

■ Section 22–2701 proscribes a highly particularized form of speech. It recites no punishable conduct other than inviting, enticing, or persuading, or addressing another, for the purpose of prostitution. *Cf.* Cohen v. California, 403 U.S. 15, 18, 91 S. Ct. 1780, 29 L.Ed.2d 284 (1971); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). The speech condemned is not of the type intended or likely to produce imminent lawless action or violence. *See* Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); United States v. Dellinger, 472 F. 2d 340, 359–60 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973). Nor does the prohibited speech

any sexual act consummated by a prostitute would fall within one of those categories, but

we need not rely upon those provisions in disposing of this appeal.

fall within the realms of opinion on issues, political dissent, enumeration of grievances, social dialogue, or the like. *See, e. g.,* New York Times Co. v. Sullivan, 376 U.S. 254, 266, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ; *cf.* Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).

Rather, what we are dealing with is a straightforward business proposal which may be regulated under the standards applicable to "purely commercial advertising."

Valentine v. Chrestensen, 316 U.S. 52, 54, 62 S.Ct. 920, 86 L.Ed. 1262 (1942) ; *see* Jamison v. Texas, 318 U.S. 413, 417, 63 S. Ct. 669, 87 L.Ed. 869 (1943). Appellees' motive in soliciting customers was the sale of their services for economic gain. Certainly self-interest or a profit motive is not enough in and of itself to preclude First Amendment analysis.[6] However, we have here a communication the sole purpose of which is to arrange a purely commercial exchange, *i. e.,* services for money. That type of dialogue is in no sense an attempt to express social concerns or grievances publicly.[7] *See* Hood v. Dun & Bradstreet, Inc., 486 F.2d 25, 29–30 (5th Cir. 1973), cert. denied, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974).

The prostitute's invitation to commercial sexual intercourse is not an essential part of any exposition of ideas. The conversation's objective is to settle the terms of an intended business transaction, and its content is likely to be wholly confined to the essentials of the bargain. While the record does not describe the solicitations which gave rise to the charges underlying this appeal, some exchange conveying the nature of the act to be performed and the price to be charged is sufficient to constitute an offense under § 22–2701.[8]

We also take note of the interests of the respective participants to a solicitation for prostitution. The interest of the prostitute is to make as much money in as little time as possible, and, therefore, to dispense with unnecessary talk. The interest of the pretended bargainers for the prostitutes' services in these cases was to control crime; in other circumstances, where the would-be purchaser is genuinely in the market, his interest would appear to be to obtain some form of sexual release. Those varying interests (excepting that of the undercover police officer) connote a purely commercial venture in which each party is out solely for herself and himself. *Compare* New York Times Co. v. Sullivan, *supra,* 376 U.S. at 266, 84 S.Ct. 710.

Having determined the character of the speech at issue, we next consider whether it is protected by the First Amendment and, if so, to what extent.

---

6. *See* Cammarano v. United States, 358 U.S. 498, 514, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959) (Douglas, J., concurring) ; Murdock v. Pennsylvania, 319 U.S. 105, 111, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). *Cf.* Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 385, 93 S.Ct. 2553, 2558, 37 L. Ed.2d 669 (1973), in which the Court stated :
   If a newspaper's profit motive were determinative, all aspects of its operations—from the selection of news stories to the choice of editorial position—would be subject to regulation if it could be established that they were conducted with a view toward increased sales. Such a basis for regulation clearly would be incompatible with the First Amendment.

7. Almost any conduct or communication arguably expresses some message or idea. Here, however, the exposition of any idea is only a minor part of, and incidental to, the communication. The primary thrust is a commercial advertisement. *See* Peterson v. Board of Educ., 370 F.Supp. 1208, 1213 (D.Neb.1973).
   Prostitution and solicitation therefor may connote (or result from) a reaction to real or imagined social ills, and in that sense may somehow express a desire for adjustments in social policies. *See, e. g.,* N.Y. Times, Feb. 28, 1975, at 1, col. 1. Any consideration of possible root causes of prostitution, however, cannot shield what is fundamentally an intended business transaction from state regulation.

8. It is not argued that anything other than the terms of the transaction was discussed.

We conclude that a solicitation for prostitution is not entitled to immunity under the First Amendment. We rely for such a holding on the factors discussed above and on the lines of precedent leading to and stemming from Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 93 S.Ct. 2553, 37 L. Ed.2d 669 (1973). *Pittsburgh Press* is direct: Where the regulated expression does "no more than propose a commercial transaction", *id.* at 385, 93 S.Ct. at 2558, as in Valentine v. Chrestensen, *supra,* or is "no more than a proposal of possible employment", as in *Pittsburgh Press,* reasonable regulation is within the permissible exercise of state police power. *Ibid.* The situation before us, like the situations presented in *Valentine* and *Pittsburgh Press,* is a "classic [example] of commercial speech," *ibid.,* and thus is subject to reasonable government regulation.[9] *See* Banzhaf v. Federal Communications Commission, 132 U. S.App.D.C. 14, 33–34, 405 F.2d 1082, 1101– 02 (1968), cert. denied, 396 U.S. 842, 90 S. Ct. 50, 24 L.Ed.2d 93 (1969).[10]

■■■ Next we examine the statute to see if the prohibition against solicitation is reasonable. Two principal bases are proffered for the argument that the manner of regulation is impermissible. First, it is .argued that since prostitution itself is not proscribed, a statute governing speech concerning such activity is unreasonable. As did the United States District Court for the Eastern District of Michigan recently in sustaining the validity of a similar statutory scheme, Morgan v. Detroit, *supra,* we disagree. Regulation of business conditions and commercial ventures long has been recognized to be a valid exercise of police power. *See, e. g.,* McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 488, 75 S.Ct. 461, 99 L.Ed. 563 (1955). As we have stated, this power does not exclude authority to regulate speech when it is purely commercial. *See* Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, *supra.* It is incorrect to contend that government is deprived of the authority to regulate a business activity merely because the activity itself is not illegal. *See, e. g.,* Williamson v. Lee Optical of Oklahoma, *supra;* Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935); Belli v. State Bar of California, 10 Cal.3d 824, 112 Cal.Rptr. 527, 519 P.2d 575 (Cal.1974) (en banc).

■■■ Second, appellees contend—and the trial court found—that the asserted societal interests in prohibiting soliciting for prostitution are unsupported by scientific or empirical data, and thus constitute capricious premises for the statute. Additionally, the trial judge was of the opinion that the real purpose of the solicitation statute is to regulate public morality, which he considered to be an impermissible legislative purpose. However, reviewing courts " 'do not demand of legislatures "scientifically certain criteria of legislation." ' " Paris Adult Theatre I v. Slaton, *supra* 413 U.S. at 60, 93 S.Ct. at 2637, *quoting* Ginsberg v. New York, 390 U.S. 629, 642–43, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), *quoting*

9. When Congress legislates for the District of Columbia, its power includes all legislative powers which a state may exercise over its affairs. *See* Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Thus Congress possesses the police power of the individual states in limiting solicitation for prostitution in furtherance of societal interests. *See* Palmore v. United States, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

10. *See also* Barrick Realty, Inc. v. City of Gary, 491 F.2d 161 (7th Cir. 1974); Hood v. Dun & Bradstreet, Inc., supra; Peterson v. Board of Education, 370 F.Supp. 1208 (D. Neb.1973); Associated Students v. Attorney General, 368 F.Supp. 11 (C.D.Cal.1973); Pent-R-Books, Inc. v. United States Postal Service, 328 F.Supp. 297 (E.D.N.Y.1971); National Organization for Women v. State Division of Human Rights, 34 N.Y.2d 416, 358 N.Y.S.2d 124, 314 N.E.2d 867 (1974); Passaic Daily News v. Blair, 63 N.J. 474, 308 A.2d 649 (1973).

Noble State Bank v. Haskell, 219 U.S. 104, 110, 31 S.Ct. 186, 55 L.Ed. 112 (1911). The lack of data supporting the statute does not render it invalid; legislatures properly may rely on scientifically unproven assumptions both in the regulation of commercial and business transactions and for the protection of the broad social interest in order and morality. *See* Paris Adult Theatre I v. Slaton, *supra,* 413 U.S. at 60–61, 93 S.Ct. 2628. In the area of the regulation of commercial professions, the Supreme Court has stated that

> . . . the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

Williamson v. Lee Optical of Oklahoma, *supra,* 348 U.S. at 487–88, 75 S.Ct. at 464. With respect to the maintenance of public morality, the Court similarly has stated:

> The sum of experience, including that of the past two decades, affords an ample basis for legislatures to conclude that a sensitive, key relationship of human existence, central to family life, community welfare, and the development of human personality, can be debased and distorted by crass commercial exploitation of sex. Nothing in the Constitution prohibits a State from reaching such a conclusion and acting on it legislatively simply because there is no conclusive evidence or empirical data.

Paris Adult Theatre I v. Slaton, *supra,* 413 U.S. at 63, 93 S.Ct. at 2638. *See also* Roth v. United States, 354 U.S. 476, 485, 77 S. Ct. 1304, 1 L.Ed.2d 1498 (1957).

There is a legitimate national, state, and community interest in maintaining a decent society, *see* Paris Adult Theatre I v. Slaton, *supra,* 413 U.S. at 59–60, 63, 93 S.Ct. 2628, and the stemming of commercialized sexual solicitations is an acceptable means of furthering this interest. We have no basis for faulting this legislative choice, and take note of the overall statutory scheme enacted by Congress in furtherance of such an objective. *See* D.C.Code 1973, §§ 22–2701 through 22–2712.[11]

We observe again that a solicitation for prostitution is a unique type of speech, and quote the following dictum from the Supreme Court's opinion in *Pittsburgh Press, supra,* 413 U.S. at 388, 93 S. Ct. at 2560:

> We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes. Nor would the result be different if the nature of the transaction were indicated by placement under columns captioned "Narcotics for Sale" and "Prostitutes Wanted" rather than stated within the four corners of the advertisement.

We conclude that a would-be prostitute constitutionally may be forbidden to solicit customers, and that a would-be customer similarly may be forbidden to solicit a person to engage in prostitution. The First Amendment presents no impediment to § 22–2701's proscription against soliciting for prostitution.

## IV. THE EQUAL PROTECTION ISSUE

An individual's right to equal protection of the laws, guaranteed in the

11. In the recent past, a number of the other sex-related statutes in the District of Columbia Code have been ruled unconstitutional by the same trial judge. In one such case, a finding of unconstitutionality based on vagueness was affirmed. District of Columbia v. Walters, D.C.App., 319 A.2d 332, appeal dismissed and cert. denied, 419 U.S. 1065, 95 S.Ct. 650, 42 L.Ed.2d 661 (1974). Four other cases necessitated reversal by this court. *See* United States v. Montalvo, D.C.App., No. 7301 (unpublished judgment dated Dec. 13, 1974); United States v. Dumas, D.C. App., 327 A.2d 826 (1974); United States v. Cozart, D.C.App., 321 A.2d 342 (1974); United States v. Carson, *supra.*

states by the Fourteenth Amendment, is guaranteed in the District of Columbia through the due process clause of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Each appellee is a woman; each has been charged with soliciting for prostitution. Based upon virtually no other facts of record, the trial court concluded that appellees are "members of the class [women] against whom the law is discriminatorily enforced".[12] A comparison of the record with the trial court's opinion (as was done illustratively in note 4, *supra*) reveals that the trial judge ruled essentially on the basis of his own social philosophy. The dismissal of the informations on equal protection grounds also must be reversed.

The dismissal of a criminal charge on the basis of a purported denial of equal protection is not a judgment to be made lightly. As the circuit court stated in Washington v. United States, 130 U.S. App.D.C. 374, 382, 401 F.2d 915, 923 (1968):

Within constitutional limits, legislative power to define crime is absolute, and even the command of equal protection leaves to the lawmaker much leeway to affect separate groups divergently. [Footnotes omitted.]

In Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660 (1954), the Supreme Court stated:

Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so dispar-

ate, relative to the difference in classification, as to be wholly arbitrary.

The consideration of an equal protection issue in the area of sexual solicitation may not be undertaken superficially. First, § 22–2701 is sex-neutral on its face. Additionally, the statute contains a dichotomy. It prohibits (1) soliciting for prostitution, and (2) soliciting for other lewd or immoral purposes. Far from holding that § 22–2701 applies only to females, this court consistently has held that a male who seeks to sell himself to another male for purposes of sodomy violates this very section of the Code, *e. g.*, Gaithor v. United States, D.C.App., 251 A.2d 644 (1969); Berneau v. United States, D.C.App., 188 A.2d 301 (1963), although the practice logically has been to charge the female solicitor under the former prohibition and to charge the male solicitor under the latter.

It is not doubted that the major law enforcement efforts in enforcing the statute are directed against the sellers of sex—as is true in the enforcement of the narcotics laws, where sellers are the principal police targets. Yet unquestionably there may be wholly valid reasons for such a circumstance, assuming it to exist. In any event, however, the trial court's finding of discriminatory enforcement is unsupported by the record, and must be set aside.[13]

## V. CONCLUSION

The rulings appealed from are reversed. The constitutionality of § 22–2701 in proscribing soliciting for prostitution is sustained, and the cases of the appellees are remanded with directions that the informations be reinstated.

Reversed and remanded.

12. The trial court's more expansive conclusion on this subject is quoted on pp. 48–49, *supra*.

13. The trial judge's opinion reflects his undoubtedly sincere conviction that there should be no prohibition in the Code against soliciting for prostitution. He is fully entitled to such a belief. However, the judgments involved properly are to be exercised by the legislature. While we are obliged to reject statutes which are unconstitutional, we are equally obliged to honor and sustain those which are valid.