Joseph V. STEWART, Appellant,

v.

UNITED STATES, Appellee.

No. 9998.

District of Columbia Court of Appeals.

Argued May 18, 1976.

Decided Oct. 5, 1976.

Glenn R. Graves, Washington, D. C., for appellant. John W. Karr, Washington, D. C., also entered an appearance for appellant.

Stephen R. Spivack, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, John L. Kern and Stuart M. Gerson, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before FICKLING, HARRIS and MACK, Associate Judges.

FICKLING, Associate Judge:

This is an appeal from a nonjury trial conviction for attempted sodomy in violation of D.C.Code 1973, §§ 22–3502,–103.

The trial court suspended imposition of the sentence and placed appellant on unsupervised probation for three years. The issues presented on appeal are whether § 22–3502 of the D.C.Code (1) invades the constitutional right of privacy; (2) violates constitutional equal protection guarantees either on its face or as applied; and (3) violates the Establishment Clause of the First Amendment. Finding that the statute passes constitutional muster, we affirm.

The facts of this case are not in dispute. At about 1:15 a. m. on April 21, 1974, while patrolling the banks of the C&O Canal near 30th and M Streets, N.W., plainclothes detectives Rockey and Farr arrested appellant after observing him engage in an act of oral sodomy with another man. Appellant was charged by information with attempted sodomy, and, after lengthy pretrial proceedings,[1] he was tried and found guilty as charged. This appeal followed.

First, appellant contends that the sodomy statute is unconstitutionally overbroad

---

1. After a hearing on appellant's motion to dismiss the information on constitutional grounds, the court below granted the motion based on an opinion by another Superior Court judge. The government appealed that order.

During the pendency of the appeal, this court reversed the lower court order upon which the dismissal of appellant's information was based. *United States v. Montalvo,* D.C. App. (No. 7301, Dec. 13, 1974, unreported judgment). On February 14, 1975, this court remanded appellant's case to the trial court, directing the trial court to file its reasons for dismissing the information or to hold further appropriate proceedings, including a *de novo* hearing.

A *de novo* hearing was held on March 24, 1975, and on April 10, 1975, the trial court vacated its prior ruling and reinstated appellant's information.

since it potentially invades the "zone of personal privacy" recognized in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). In so arguing, appellant correctly concedes that his own sodomitic acts were not protected by any right to privacy since they occurred in a public area. *United States v. Buck,* D.C. App., 342 A.2d 48, 49 (1975); *Harris v. United States,* D.C.App., 315 A.2d 569, 574 (1974) (en banc). Rather, appellant attempts to assert the right to privacy on behalf of third parties who engage in private consensual sodomy.

■ Without addressing the merits of this argument,[2] we hold that appellant lacks standing to raise the potential overbreadth of D.C.Code 1973, § 22–3502. This holding is compelled by our recent decision of *Harris v. United States, supra* at 574–75. In *Harris,* Associate Judge Kern, writing for a unanimous court sitting en banc, held that an identically situated defendant lacked standing to assert the same constitutional argument on behalf of third parties.

■ Second, appellant contends that § 22–3502 violates constitutional equal protection guarantees[3] both on its face and as applied. Specifically, appellant contends that the prohibition of sodomitic acts has a disproportionate and disparate impact on homosexuals, since it deprives this discrete and insular minority of one of its primary avenues of sexual gratification. Moreover, appellant asserts that § 22–3502 is being enforced in a selective and discriminatory manner.

■ We find that the sodomy statute is facially unassailable under the traditional equal protection analysis. D.C.Code 1973, § 22–3502, provides in pertinent part:

(a) Every person who shall be convicted of taking into his or her mouth or anus the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth or anus of any other person or animal, or who shall be convicted of having carnal copulation in an opening of the body except sexual parts with another person, shall be fined not more than $1,000 or be imprisoned for a period not exceeding ten years. Any person convicted under this section of committing such act with a person under the age of sixteen years shall be fined not more than $1,000 or be imprisoned for a period not exceeding twenty years. . . .

The above statute, by its very terms, proscribes specific conduct and does not single out any particular group of persons. The statute applies to acts between men, between women, and between a man and a woman. *United States v. Cozart,* D.C. App., 321 A.2d 342, 343 (1974). Similarly, § 22–3502 makes no distinction between sodomitic acts committed by homosexuals, heterosexuals, or bisexuals. In view of its universal applicability, we must conclude that our sodomy statute is neutral on its face. *See United States v. Moses,* D.C. App., 339 A.2d 46, 55 (1975), *cert. denied,* 426 U.S. 920, 96 S.Ct. 2624, 49 L.Ed.2d 373 (1976).

2. We would note only that recently a three-judge district court panel held that the Virginia sodomy statute was constitutional as applied to private consensual sodomitic acts. *Doe v. Commonwealth's Attorney,* 403 F. Supp. 1199 (E.D.Va.1975). Pursuant to 28 U.S.C. § 1253 (1970), the case was appealed to the Supreme Court. Without hearing oral argument the Court rendered a one-line affirmance of the judgment of the lower court. *Doe v. Commonwealth's Attorney,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976).

3. The Fourteenth Amendment is not applicable to the District of Columbia. However, concepts of equal protection are inherent in the due process of law guaranteed to citizens of the District by the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Washington v. United States,* 130 U.S.App.D.C. 374, 401 F. 2d 915 (1968).

■ Moreover, we reject appellant's contention that despite its facial neutrality, § 22–3502 violates equal protection guarantees because of its disparate impact on the homosexual group. A law which affects the activities of some groups differently from the way in which it affects the activities of other groups does not necessarily violate equal protection guarantees. *Kotch v. Board of River Port Pilot Comm'rs,* 330 U.S. 552, 556, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1940). Under traditional equal protection principles,[4] a state retains broad discretion to classify as long as its classifications have a reasonable basis. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland,* 366 U.S. 420, 425–27, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed.2d 369 (1911). Under this standard, we find that the prohibition of sodomitic acts is a reasonable exercise of the right of the legislature to maintain a decent society. *See Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 69, 93 S. Ct. 2628, 37 L.Ed.2d 446 (1973).[5]

■ Appellant also contends that § 22–3502 violates equal protection guarantees due to its alleged discriminatory enforcement. We reject this argument since we find no evidence on the record showing discriminatory enforcement. As this court stated in *United States v. Cozart, supra* at 344:

The burden upon the defendant to prove discriminatory enforcement of a valid statute is heavy. The prosecutor's

discretion in law enforcement "is by its very nature exceedingly broad." Mere laxity in law enforcement, or the existence of violators who have not been punished, does not constitute a denial of ·equal protection. Rather, a deprivation of equal protection will only be found in the existence of intentional or purposeful discrimination. [Footnotes omitted.]

In the instant case, appellant simply made no showing of discriminatory enforcement, much less intentional or purposeful discrimination against homosexuals. Here, the evidence demonstrates that the higher incidence of arrests of homosexuals under § 22–3502 is due to the lack of knowledge by the police concerning heterosexual sodomitic acts.

Finally, appellant contends that the sodomy statute violates the Establishment Clause of the First Amendment.[6] Appellant examines the origins and development of the prohibition against sodomy and concludes that "its prohibition by the State is a direct and unbroken legacy of the Christian Church." Appellant argues that § 22–3502 is unconstitutional due to this sectarian origin. We disagree.

■ There is no dispute that religious forces motivated the original laws proscribing sodomitic acts. However, this fact is clearly not dispositive of the constitutional issue involved here. The Supreme Court stated in *McGowan v. Maryland, supra,* 366 U.S. at 442, 81 S.Ct. at 1113:

However, it is equally· true that the "Establishment" Clause does not ban federal or state regulation of conduct whose reason or effect merely happens

---

4. Closer judicial scrutiny is not required in this case since D.C.Code 1973, § 22–3502, neither impinged upon fundamental rights, *see Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), nor employed a suspect classification, *see Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed. 2d 534 (1971) (nationality or alienage); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L. Ed.2d 1010 (1967) (race).

5. We make no judgment, of course, concerning the wisdom or policy of the statute, since these considerations are exclusively for ,the legislature absent constitutional infirmities.

6. "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I.

to coincide or harmonize with the tenets of some or all religions. In many instances, the Congress or state legislatures conclude that the general welfare of society, wholly apart from any religious considerations, demands such regulation. Thus, for temporal purposes, murder is illegal. And the fact that this agrees with the dictates of the Judaeo-Christian religions while it may disagree with others does not invalidate the regulation. So too with the questions of adultery and polygamy. . . . The same could be said of theft, fraud, etc., because those offenses were also proscribed in the Decalogue. [Citations omitted.]

Despite appellant's scholarly analysis of the historical genesis of the sodomy laws, he has failed to demonstrate that such laws, as presently enacted, connote "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz v. Tax Commission,* 397 U. S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970). The classification here is not religiously based "on its face." Moreover, as we have noted above, the government may legitimately legislate to further the interests of public decency. *See Paris Adult Theatre I v. Slaton, supra,* 413 U.S. at 69, 93 S.Ct. 2628. Paraphrasing language by Mr. Chief Justice Warren in *McGowan v. Maryland, supra,* 366 U.S. at 445, 81 S.Ct. at 1115:

To say that [Congress cannot proscribe sodomitic acts] . . . solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State.

Accordingly, we conclude that § 22–3502 does not violate the Establishment Clause of the First Amendment.

*Affirmed.*