**Sandra W. WOOD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 84–543.**

District of Columbia Court of Appeals.

Argued Jan. 23, 1985.

Decided Sept. 23, 1985.

---

David H. Remes, Washington, D.C., appointed by this court, for appellant.

Kenneth J. Melilli, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Barbara A. Van Gelder, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and BELSON and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of sexual solicitation in violation of D.C.Code § 22–2701 (1984 Supp.).[1] On appeal she contends that the sexual solicitation statute violates the First Amendment and, alternatively, that the trial court erred in denying her motion to suppress evidence. We reject both contentions and affirm the conviction.

I

At the pretrial suppression hearing Officer Gregory McClure, an eleven-year veteran of the Metropolitan Police, testified that in the early afternoon of September 14, 1983, while he and his partner were investigating prostitution activities, he saw appellant standing in the 1300 block of M Street, N.W., an area known for prostitution. He watched as she spoke to a man in a station wagon and directed him by gestures to drive around the corner. When he did so, appellant and another woman, whom Officer McClure recognized as a prostitute, went over to the station wagon, and the

---

[1] Section 22–2701 provides in pertinent part:
It shall not be lawful for any person to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons 16 years of age or over in the District of Columbia, for the purpose of prostitution ... under a penalty of not more than $300 or imprisonment for not more than 90 days, or both.

other woman spoke to the driver while appellant stood next to her. After a brief conversation the man drove away. Appellant then spoke to a male pedestrian as he walked along the street. He got into a car, backed up a few feet, and waited a short time, but then he too drove away. Moments later Officer McClure saw a third man in a black van make a U-turn and stop a few yards away from appellant. Appellant approached the van and spoke to the driver, but he also left. Appellant then approached a gray car, leaned into the car, and spoke to the driver; he too drove away. Then a fifth man, later identified as Michael Hillman, drove up and pulled his car over to the curb where appellant was standing. After he and appellant exchanged a few words, Hillman backed his car up and parked it. Appellant walked over to the car and spoke briefly with Hillman, then got into his car and drove off with him.

Officer McClure, who had made well over 100 arrests for sexual solicitation, followed appellant and Hillman for approximately one mile, until Hillman's car entered the Whitehurst Freeway. When it appeared that Hillman was about to drive into Virginia, McClure stopped the car and arrested appellant. Hillman later told Officer McClure that he had agreed to pay appellant $100 for two hours of sexual activity.

At the conclusion of the suppression hearing, the court found that Officer McClure had probable cause to arrest appellant for sexual solicitation and denied appellant's motion to suppress Hillman's testimony.

At trial Michael Hillman was the government's only witness. Hillman, who had been granted immunity from prosecution, testified that on the afternoon in question he drove into the Thomas Circle area, saw appellant standing on the corner, and pulled his car up beside her. Appellant asked him to roll down his window; when

he did so, appellant asked if he was "looking for some company." Hillman said that he was and asked appellant what her price was for a couple of hours; she said it would be $100. He replied, "Okay," and appellant got into his car. After the police stopped him, Hillman told Officer McClure that he and appellant were friends, but later he admitted that he had "picked her up" and had agreed to pay her $100 for sexual intercourse.[2] On this testimony the court found appellant guilty of sexual solicitation.

## II

Appellant challenges the constitutionality of D.C.Code § 22–2701, claiming that it violates the First Amendment by prohibiting speech which proposes "entirely lawful conduct." Appellant concedes that this court upheld the statute against the same challenge in *United States v. Moses*, 339 A.2d 46 (D.C.1975), *cert. denied*, 426 U.S. 920, 96 S.Ct. 2624, 49 L.Ed.2d 373 (1976), but contends that subsequent decisions of the Supreme Court—specifically, *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), and its progeny—render this court's decision in *Moses* invalid.

In *Moses* this court held that sexual solicitation was a " 'classic [example] of commercial speech,' ... and thus [was] subject to reasonable government regulation." 339 A.2d at 53 (citations and footnote omitted). After examining the statute and the governmental interests at stake, we concluded that section 22–2701 was a reasonable regulation which furthered the "national, state, and community interest in maintaining a decent society," and upheld the statute against a First Amendment challenge. *Id.* at 54 (citation omitted).

A year after our decision in *Moses*, the Supreme Court in *Virginia State Board of Pharmacy, supra*, extended First Amend-

---

**2.** Hillman also testified that appellant called him approximately one or two weeks later and

stated that she would still like to "get together" with him.

ment protection to commercial speech, which until then had been deemed to be unprotected. *See, e.g., Beard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); *Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). The Court recognized, however, that commercial speech differed from other constitutionally protected speech and triggered a lower level of judicial scrutiny. *Virginia State Board of Pharmacy, supra,* 425 U.S. at 771 n. 24; *accord, e.g., Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 64–65, 103 S.Ct. 2875, 2879, 77 L.Ed.2d 469 (1983); *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 506–507, 101 S.Ct. 2882, 2891, 2992, 69 L.Ed.2d 800 (1981); *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 455–456, 98 S.Ct. 1912, 1918, 1919, 56 L.Ed.2d 444 (1978). As the Court explained in *Ohralik:*

> To require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech. Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression.

*Id.* at 456, 98 S.Ct. at 1918.

The need for standards by which to assess the validity of restrictions on commercial speech was met in *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). In that case the Court set forth a four-part test:

> In commercial speech cases ... a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566, 100 S.Ct. at 235. Appellant contends that application of this test to section 22–2701 demonstrates that it is unconstitutional. We cannot agree.

■ The speech at issue here—soliciting for the purpose of prostitution—concerns *unlawful* activity. Although prostitution as such is not specifically prohibited under the District of Columbia Code, virtually any sexual act which could be performed by a prostitute is, as we noted in *Moses,*[3] proscribed by statute. *See* D.C.Code §§ 22–301 (adultery), 22–1002 (fornication), 22–3502 (sodomy). We simply cannot accept appellant's assertion that the speech at issue here relates to "entirely lawful conduct." Since the First Amendment does not protect "a solicitation to commit an act lawfully prohibited by statute,"[4] we hold that soliciting for the purpose of prostitution is not entitled to First Amendment protection. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (speech proposing illegal transaction

---

3. *United States v. Moses, supra,* 339 A.2d at 50 n. 5.

4. *Riley v. United States,* 298 A.2d 228, 233 (D.C.) (footnote omitted), *cert. denied,* 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973). Appellant makes no contention that these criminal proscriptions against adultery, fornication, and sodomy are unconstitutional. She suggests in her reply brief that if these statutes were enforced only against prostitutes, such a pattern of enforcement might raise constitutional problems. She concedes, however, that this case does not present such problems ("the record on this question is incomplete"), and in any event the suggestion seems dubious in light of *United States v. Cozart,* 321 A.2d 342 (D.C.1974), and *Stewart v. United States,* 364 A.2d 1205 (D.C.1976), and the precedents cited in those opinions.

not protected); *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) (advertisements which promote illegal sex discrimination not protected).[5]

██ Furthermore, even if sexual solicitation did not involve unlawful activity so that it might arguably be protected by the First Amendment, D.C.Code § 22–2701 would nevertheless be constitutional if it directly advanced a substantial governmental interest and were narrowly tailored to serve that interest. *See Central Hudson, supra*, 447 U.S. at 566, 100 S.Ct. at 235. This court has already held in *Moses* that the statute meets the first of these requirements, the "substantial governmental interest" test:

> There is a legitimate national, state, and community interest in maintaining a decent society ... and the stemming of commercialized sexual solicitations is an acceptable means of furthering this interest.

*United States v. Moses, supra*, 339 A.2d at 54 (citation omitted). Nothing in any Supreme Court case since *Moses* suggests that this holding was in error. The second requirement, that the statute be "narrowly tailored,"[6] is met by the plain language of section 22–2701, which is specifically addressed to "the stemming of commercialized sexual solicitations" and goes not a millimeter further.

We therefore conclude that our decision in *Moses* remains sound and that it has not been weakened by the line of Supreme Court cases giving First Amendment protection to commercial speech. On the authority of *Moses*, we reject appellant's constitutional challenge to the solicitation statute.

### III

██ Appellant also contends that the police lacked probable cause to believe she had committed a crime, that her arrest was therefore unlawful, and that Michael Hillman's testimony should have been suppressed as a fruit of that arrest. Appellant's premise is faulty. The evidence presented at the suppression hearing clearly established that the arresting officer had probable cause to believe appellant was soliciting for prostitution.

Officer McClure, an eleven-year veteran of the police department who had made more than 100 arrests for sexual solicitation, saw appellant standing on the street in an area known for prostitution. He watched her for approximately forty-five minutes and during that time saw her speak to five men, four of whom were in vehicles. On one occasion she was in the company of a woman known to be a prostitute, and on another occasion she got into a man's car and drove away with him. Although there could conceivably have been an innocent explanation of appellant's conduct, the law does not require that "all innocent explanations for a person's actions be absent before those actions can provide probable cause for an arrest." *Tobias v. United States*, 375 A.2d 491, 494 (D.C. 1977); accord, *Peterkin v. United States*, 281 A.2d 567, 569 (D.C.1971), cert. denied,

---

**5.** Appellant concedes that the legislature could constitutionally make prostitution itself a crime if it chose to do so. In these circumstances it would be incongruous to hold on the one hand that the legislature could proscribe both prostitution and soliciting, and on the other hand that it could not, consistently with the First Amendment, proscribe soliciting alone. *Cf. Dunagin v. City of Oxford*, 718 F.2d 738, 742 (5th Cir.1983) (en banc), cert. denied, —— U.S. ——, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). The Supreme Court has not yet decided this precise question, as the *Dunagin* court noted, but in the *Pitts-*

*burgh Press* case, *supra*, 413 U.S. at 388, 93 S.Ct. at 2560, it has given us a hint of how it might rule ("We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes").

**6.** Or, in the words of the Supreme Court, "not more extensive than is necessary to serve that [substantial governmental] interest." *Central Hudson, supra*, 447 U.S. at 566, 100 S.Ct. at 235.

406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972). We find no error in the denial of the motion to suppress.[7]

 Finally, appellant claims that the trial court erred in quashing her subpoena *duces tecum* for Metropolitan Police Special Order 82–29A, which sets forth criteria to be used in evaluating whether certain conduct warrants prosecution. Appellant contends that this order was "highly relevant to [her] attempt to show that she had been arrested without probable cause under the statute, and in violation of the government's own rules for enforcing the statute." This contention is frivolous. Special Order 82–29A simply lists the criteria established by the United States Attorney's Office in determining whether certain conduct warrants prosecution. It had absolutely no bearing on the constitutionality of appellant's arrest, which was the only issue before the court at the suppression hearing. *See United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).

*Affirmed.*

---

**7.** Even assuming *arguendo* that Officer McClure did not have probable cause to believe appellant had committed a crime and that her arrest was therefore unlawful, it cannot be said that Hillman's testimony was "come at by the exploitation of that illegality." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Consequently, even if appellant's arrest had been unlawful, Hillman's testimony would still have been admissible. Officer McClure had recorded the license number of Hillman's car some time before he arrested appellant, so that he could have found Hillman simply by tracing that number through the Department of Motor Vehicles. Thus Hillman's testimony was not the fruit of appellant's arrest. *See United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *cf. Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). There is no basis in the record for appellant's speculation that the police would not have contacted Hillman at all if they had not stopped his car on the freeway that afternoon.