533 P.2d 1173

**The STATE of Arizona, Appellant,**

**v.**

**Santino SABARTINELLI, Appellee.**

**No. 2 CA–CR 482.**

Court of Appeals of Arizona,
Division 2.

April 17, 1975.

Dennis DeConcini, Pima County Atty. by Frank W. Frey, Deputy County Atty., Tucson, for appellant.

Hayes & Bridegroom by Raymond R. Hayes, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

This is an appeal by the State from an order granting appellee's motion to suppress. The facts disclosed that appellee was suspected by law enforcement officers of knowing the whereabouts of a stolen trailer. In April of 1974 and again on June 6, 1974, Detective John Peru of the Pima County Sheriff's Department questioned appellee. Detective Peru also spoke with Mrs. Borders, the mother of appellee's girl friend, Jana Borders. Mrs. Borders stated that the previous week she had been to the house where appellee and her daughter were living together and smelled a strong odor of marijuana. She further said that she had an indication from her friends that appellee was possibly dealing in narcotics and pills.

On June 6, 1974, Detective Peru made a records check on appellee which disclosed that appellee had two outstanding traffic warrants. Accompanied by Detective Tanner, Peru went to the residence of appellee and Jana Borders with the intention of talking to appellee about the trailer and arresting him on the outstanding traffic warrants.

When the officers arrived, they were informed by Borders that appellee was not there. Also present in the house were two other persons, one of whom, Mathis, informed the detectives that he was waiting for appellee and that appellee was driving his (Mathis) car.

The officers parked across the street from the residence and decided to wait for appellee's return. After several minutes, appellee pulled into the driveway. The detectives then pulled into the driveway behind him. As the detectives alighted from their vehicle, they noticed that appellee appeared to be putting something, which they were not able to see, under the front seat of the automobile he was driving. Jana Borders who personally saw the event, stated that she saw appellee turn in his seat but did not see any movement suggesting the placement of articles under the seat.

Detective Peru tapped on the window of the car and asked appellee to exit. Appellee did so and was given the "Miranda" warnings. Peru then questioned him about the stolen vehicle. Throughout this conversation appellee seemed very nervous, fidgety and excited. He was thereafter placed under arrest by Peru and his hands were handcuffed behind his back. Peru then asked him for permission to search the automobile. Appellee told Peru he could not give consent since the automobile did not belong to him. At that point, Peru told appellee he was "going to search the vehicle with probable cause." There was a conflict in the testimony of Peru and Detective Tanner as to appellee's location when the search of the car took place, Peru testifying that appellee ws near a fence 15 to 20 feet away, and Tanner testifying that appellee was in the detectives' vehicle. Peru's search revealed narcotics under the driver's seat.

At the hearing on the motion to suppress Peru sought to justify his search on the grounds that there was probable cause to believe the vehicle contained narcotics, that it was a search for weapons, and that, since it was police procedure to tow away an arrestee's vehicle, sooner or later he would probably have had to make an inventory.

Appellant presents the following questions for review:

1. Whether it was error for the trial court, in granting the appellee's motion to suppress, to ignore the uncontroverted testimony of a police officer.

2. Whether appellee's furtive movements coupled with an officer's prior knowledge of his criminal background gave that officer probable cause to search the car which appellee was driving.

■ As to appellant's first contention, it is clear from the record that the trial judge did not ignore the testimony of the detectives, but rather did not believe that certain evidence had any legal significance on the issues involved. We therefore move on to appellant's second question for review.

On appeal the state wisely does not attempt to justify the search as either a weapon or inventory search. It contends that the furtive movements of appellee coupled with the circumstances and prior knowledge of the detectives gave a criminal tint to appellee's movements which justified a search.

■ A leading case on the "furtive movement or gesture" as justifying a police search is the case of People v. Superior Court of Yolo County, 3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449 (1970), which held that a furtive gesture, coupled with other *reliable* information can constitute sufficient cause for a search without a warrant. Relative to automobile searches,[1] the *Yolo* court recognized that, as an incident to a lawful arrest, a warrantless search limited both as to time and place may be made (1) for instrumentalities used to commit the crime, the fruits of that crime and other evidence thereof which will aid in the apprehension or conviction

---

1. This is to be contrasted with searches of a person incident to a lawful arrest. See,

United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

of the criminal; (2) for articles the possession of which is itself unlawful, such as contraband or goods known to be stolen; and (3) for weapons which could be used to assault the arresting officer or to effect an escape. Since appellee's arrest was for outstanding traffic warrants, there were neither "fruits" of the offense nor any "evidence" subject to seizure. Nor can the search be justified as a search for weapons since there was no reliable information that appellee was armed nor was there any need to search for weapons for the police officer's own protection since appellee was handcuffed with his hands behind his back either 15 to 20 feet away or in the police vehicle.

In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the police received a report of an armed robbery of a service station; eyewitnesses furnished detailed descriptions of the articles stolen, the garb and weapons of the robbers, and the get-away car; shortly thereafter the defendants were arrested in a vehicle precisely matching the description. Upholding a delayed search of the automobile at the police station on the grounds of probable cause, the court noted that although the officers had probable cause for their warrantless arrest of the defendants, "the validity of an arrest is not necessarily determinative of the right to search a car if there is probable cause to make the search. Here, as will be true in many cases, the circumstances justifying the arrest are also those furnishing probable cause for the search." 399 U.S. at 47, n. 6, 90 S.Ct. at 1979.

In the case sub judice, the arrest for traffic warrants did not also furnish probable cause to search the interior of the car. In *Chambers* the arresting officers could reasonably expect to find weapons, clothing, loot, or other evidence of the robbery in a specifically identified vehicle in which the defendants were when arrested; it was therefore not unreasonable to conduct a search for such items, and if con-

traband had been uncovered in the course of that search, it could have been lawfully seized. In an ordinary traffic case, there must be independent probable cause to believe the vehicle does in fact contain contraband.

In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the court held that the officers acted on probable cause because "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [contraband] was being transported in the automobile which they stopped and searched." 267 U.S. at 162, 45 S.Ct. at 288.

In the case at bench, although Detective Peru had information based on Mrs. Border's personal observation that marijuana was being smoked in appellee's *residence,* the information as to the *possibility* of appellee being involved in narcotics traffic was mere rumor and not reliable. Furthermore, that information gave no probable cause to believe that the car he was driving contained any contraband.

The problem with allowing a police officer to rely on furtive gestures or furtive movement alone in determining probable cause is recognized by the court in *Yolo*:

> "The difficulty is that from the viewpoint of the *observer,* an innocent gesture can often be mistaken for a guilty movement. He must not only perceive the gesture accurately, he must also interpret it in accordance with the actor's true intent. But if words are not infrequently ambiguous, gestures are even more so. Many are wholly nonspecific, and can be assigned a meaning only in their context. Yet the observer may view that context quite otherwise from the actor: not only is his vantage point different, he may even have approached the scene with a preconceived notion—consciously or subconsciously—of what

gestures he expected to see and what he expected them to mean. The potential for misunderstanding in such a situation is obvious." 3 Cal.3d at 818, 91 Cal. Rptr. at 735, 478 P.2d at 455.

The facts of the case at bench must be distinguished from those in State v. Kelley, 104 Ariz. 418, 454 P.2d 563 (1969), vacated, 399 U.S. 525, 90 S.Ct. 2252, 26 L.Ed.2d 783 (1970). In the *Kelley* case, the defendant was being legally detained while the vehicle he was driving was investigated. The arresting officer had observed the defendant cross the center stripe with his vehicle at 4:00 a. m. When the defendant pulled his car to the side of the road, he was seen leaning forward and downward in his seat. "He appeared to be 'very nervous, very fidgety, sort of red-eyed.'" 104 Ariz. at 420, 454 P.2d at 565. He attempted to kick a brown bag under the seat, and, when questioned about it, said he didn't know anything about it. The action of the United States Supreme Court indicates that after a traffic arrest a search of the vehicle is not permissible because no evidence of the crime could be gleaned; it also indicates that there was not evidence that the bag contained contraband. It is significant that on remand our Supreme Court upheld the search as incident to an arrest for theft of a motor vehicle. State v. Kelley, 107 Ariz. 8, 480 P.2d 658 (1971), cert. denied, 404 U.S. 866, 92 S.Ct. 128, 30 L.Ed.2d 110. The *Kelley* decision is inapposite.

We hold that a furtive gesture coupled with prior reliable information may constitute probable cause for a search. However, here there was no proof of any prior reliable information which would give a criminal connotation to appellee's gestures. The trial court did not err in granting appellee's motion to suppress.

Affirmed.

HATHAWAY and KRUCKER, JJ., concur.