STATE of Utah, Plaintiff and
Respondent,

v.

Charlene Anne HOLMES, Defendant
and Appellant.

No. 880168–CA.

Court of Appeals of Utah.

May 3, 1989.

James C. Bradshaw and Joan C. Watt,
Salt Lake City, for defendant and appel-
lant.

David L. Wilkinson and Charlene Barlow,
Salt Lake City, for plaintiff and respon-
dent.

Before BENCH, BILLINGS and
GREENWOOD, JJ.

BENCH, Judge:

Defendant appeals her conviction for attempted unlawful possession of a controlled substance, a class A misdemeanor, in violation of Utah Code Ann. § 58–37–8 (Supp.1988). Defendant argues on appeal that the evidence against her should have been suppressed on two grounds. First, she claims that the police lacked reasonable suspicion to stop the vehicle in which she was a passenger. Second, she argues that even if the motor vehicle stop was valid, the officers unconstitutionally seized evidence that was subsequently used against her. Although we conclude that the police had reasonable suspicion to stop the vehicle, the seizure of evidence was improper. We, therefore, reverse and remand.

## FACTS

Defendant Charlene Anne Holmes was arrested in Salt Lake City shortly after 8:30 p.m. on Thursday, September 17, 1987. The events that led to her arrest were described by two plainclothes police officers at a hearing on defendant's motion to suppress evidence. The officers testified that they first observed the defendant standing on the sidewalk near 1200 South State Street, talking to the male occupant of a pickup truck. After a short conversation, defendant began "strolling" south on State Street, turning occasionally to look back at traffic. In the next two blocks, she was observed having brief conversations with the male drivers of two other vehicles. She then met again with the driver of the second vehicle, conversed briefly, and got into the vehicle.

Suspecting that the occupants of the vehicle had made a "prostitution deal," the officers followed the vehicle as it proceeded south on State Street, turned east, and briefly entered and exited two South High School parking lots. The vehicle eventually turned back in the direction of its point of origin.

Based on this "somewhat evasive" driving pattern, the officers surmised that the occupants had realized that the police were following. The officers decided to stop and question them. While one officer approached the driver and requested him to step to the rear of the car, the other officer stood on the passenger side of the car and watched defendant. The officer testified that the defendant looked back over her left shoulder at the other officer, then moved her purse from her lap to the floor. He continued to watch as she removed a roll of paper towels from the purse and attempted to stuff it down between the car seat and the console.

The officer opened the car door and asked for the roll of towels. After defendant denied it was hers, the officer reached in, removed the roll, and unrolled it. Inside, he found two syringes, a spoon, and two small packets of mayonnaise. The syringes contained cocaine. Although defendant was arrested on this narcotics violation, neither she nor the driver was charged with a sexual offense.

Defendant's pretrial motion to suppress the narcotics evidence was denied. Although it is unclear from the record as to the timing and reasons therefor, an amended information was filed which reduced the charge from a third degree felony for possession of a controlled substance to a class A misdemeanor for attempted possession. The defendant submitted the case to the court for disposition after the suppression hearing without further testimony. On the basis of that evidence, defendant was convicted.

## THE MOTOR VEHICLE STOP

"Any time a police officer stops an automobile the stop necessarily involves detention and therefore is [an] encounter requiring reasonable, articulable suspicion." *State v. Baird*, 763 P.2d 1214, 1216 (Utah App.1988). *See also Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). This constitutionally mandated standard has been codified in Utah Code Ann. § 77–7–15 (1982):

A peace officer may stop any person in a public place when he has reasonable suspicion to believe he has committed or is

in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.

A brief investigatory stop must be based on "objective facts" that the "individual is involved in criminal activity." *State v. Swanigan,* 699 P.2d 718, 719 (Utah 1985) (quoting *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979)). Whether there are objective facts to justify such a stop depends on the "totality of the circumstances." *State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987); *State v. Sierra,* 754 P.2d 972, 977 (Utah App.1988). However, there is no "bright line delineating what is or is not reasonable." *Baird,* 763 P.2d at 1216.

On appeal, defendant argues that the initial stop of the motor vehicle in which she was riding was unreasonable.[1] Defendant bases this argument on the premise that any suspicion of criminal activity should have dissipated once the police surmised that the participants had aborted the alleged "prostitution deal." Thus, defendant contends that the purpose of the vehicle stop must have been improper, i.e., to harass or seek an incriminating admission from the occupants. Defendant also questions the adequacy of the articulated factors upon which the state relied in stopping the vehicle. She argues that her "strolling," her brief conversations with men, the evasive driving pattern, and the fact that the area is known for its high level of prostitution activity are insufficient to establish reasonable, articulable suspicion.[2]

We are unpersuaded by these arguments. Section 77–7–15 permits an officer to stop an individual who has committed, is committing, or is attempting to commit an offense. In the case of prostitution, the offense is complete once there is an offer or agreement to engage in sexual activity for a fee; it is unnecessary to actually engage in the sexual activity. Utah Code Ann. § 76–10–1302 (1978). The officers testified that they believed that a "deal" had been made, i.e., an offense *had occurred,* and stated the reasons for that belief. Section 77–7–15 clearly permitted the officers to more fully investigate by interviewing the occupants of the vehicle.

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

Defendant's assertion of an improper purpose on the part of the police further ignores the inference of criminal activity. "When a police officer sees or hears conduct which gives rise to suspicion of crime, he has not only the right but the duty to make observations and investigations to determine whether the law is being violated; and if so, to take such measures as are necessary in the enforcement of the law." *State v. Folkes,* 565 P.2d 1125, 1127 (Utah 1977), *cert. denied,* 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977). We thus reject defendant's claim of improper purpose.

With respect to the adequacy of the factors articulated by the police as a basis for the stop, we note at the outset that the

---

1.  Defendant urges us to impose a more rigorous test under article I, section 14 of the Utah Constitution to determine what constitutes reasonable suspicion. However, she offers no justification for doing so. This is an insufficient basis for us to analyze state constitutional issues and we decline to do so. *See State v. Arroyo,* 770 P.2d 153, 154 n. 1 (Utah App.1989). Our analysis is thus limited to the protections afforded under the fourth and fourteenth amendments to the United States Constitution.

2.  In addition to the factors listed by defendant, the state also asserts three other factors justifying the motor vehicle stop: "defendant looking back toward traffic;" "defendant's actions fit the normal scenario of prostitutes on State Street;" and "[the officer's] experience in vice enforcement."

officers were "entitled to assess the facts in light of [their] experience." *Brignoni–Ponce*, 422 U.S. at 885, 95 S.Ct. at 2582. The two officers involved in this case had between them over 34 years of police experience, including four years of vice enforcement. Such experienced officers may be "able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." *Brown*, 443 U.S. at 52 n. 2, 99 S.Ct. at 2641 n. 2. *See also State v. Baumgaertel*, 762 P.2d 2, 4 (Utah App.1988). The officers' actions are to be objectively assessed in light of all the facts and circumstances confronting the officers at the time. *Scott v. United States*, 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *Sierra*, 754 P.2d at 977.[3]

These principles have particular significance in examining the defendant's actions shortly before her arrest. The officers' testimony made plain that the defendant's actions did not constitute the insouciant wandering she would have us believe. The vice officer distinguished defendant's actions from that of other foot traffic in the area:

> People who are walking along State Street don't normally stroll at an extremely [s]low pace if they are walking to get somewhere. Hookers often stroll, walking very slowly, looking back towards traffic. This is the type of thing that she was doing.

According to the testimony, defendant had done nothing to initiate the brief conversations she had with male occupants of various motor vehicles, yet those other individuals also appear to have detected something in her behavior which prompted them to pull over and converse with her.

We agree with defendant's assertion that an area's reputation for criminal activity should not be imputed to an individual. We reject, however, the analogy between this case and the cases that find the "high crime area" factor insufficient to constitute reasonable suspicion. This is not a situation where the police allege that an individual was doing "something" in the wrong place and at the wrong time. Rather, the police suspected a prostitution deal in an area known for prostitution activity. The officers observed a particular type of behavior which was consistent not only with criminal activity, but also with the reputation of the area.

In *Wood v. United States*, 498 A.2d 1140 (D.C.1985), a prostitution case with a similar factual pattern, the appellate court went beyond consideration of reasonable suspicion, and concluded there was *probable cause* for defendant's arrest. While we do not go that far, the court's observations in *Wood* are enlightening:

> [A]n eleven-year veteran of the police department who had made more than 100 arrests for sexual solicitation, saw appellant standing on the street in an area known for prostitution. He watched her for approximately forty-five minutes and during that time saw her speak to five men, four of whom were in vehicles. On one occasion she was in the company of a woman known to be a prostitute, and on another occasion she got into a man's car and drove away with him. Although there could conceivably have been an innocent explanation of appellant's conduct, the law does not require that "all innocent explanations for a person's actions be absent before those actions can provide probable cause for an arrest."

*Id.* at 1144 (quoting *Tobias v. United States*, 375 A.2d 491, 494 (D.C.1977)).

In this case, the trial court denied defendant's motion to suppress after considering the "somewhat evasive" driving pattern along with the place, time, defendant's strolling, and the pattern of brief conversations. Because of the trial court's advantageous position in determining the factual basis for a motion to suppress, that determination should not be reversed unless it is clearly erroneous. *State v. Ashe*, 745 P.2d 1255, 1258 (Utah 1987). Examining the objective facts in the totality of

---

**3.** We decline, however, to expand the pretextual traffic stop analysis of *Sierra* to the facts of this case.

the circumstances, we do not find the trial court's determination of reasonable suspicion clearly erroneous. We hold, therefore, that the defendant was constitutionally stopped and detained.

## SEIZURE OF EVIDENCE

The facts on which the trial court based its decision to deny defendant's motion to suppress are not substantially in dispute. The defendant contends, however, that those facts constitute an illegal search and seizure in violation of her constitutional rights.

■ Warrantless searches are unreasonable per se unless they fall within a recognized exception to the warrant requirement of the fourth amendment. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Cole*, 674 P.2d 119, 123 (Utah 1983). One such exception includes objects within the plain view of an officer. *Id. See also Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 465–71, 91 S.Ct. 2022, 2037–41, 29 L.Ed.2d 564 (1971). The "plain view" exception requires: (1) lawful presence of the officer; (2) evidence in plain view; and (3) evidence which is clearly incriminating. *State v. Kelly*, 718 P.2d 385, 389 (Utah 1986); *State v. McIntire*, 768 P.2d 970, 971–72, (Utah App.1989). The fact that the nature of seized property is not directly related to the criminal activity that was suspected prior to the search does not, ipso facto, make a search unreasonable. *See Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987) (the lack of relationship between the search and the intrusion *always* exists with police actions validated under the plain view doctrine).

In addressing the three prongs of the plain view exception, we turn first to whether the presence of the arresting officer was lawful. *See, e.g., State v. Austin*, 584 P.2d 853, 856 (Utah 1978). When the roll of paper towels was first observed, the officer was standing in a public thoroughfare beside the passenger door of the vehicle. As we have already established that there was reasonable suspicion for the officers to stop the vehicle, we conclude that the officer's presence beside the vehicle was lawful.

The record also reveals facts adequate to satisfy the second prong of the plain view exception. The arresting officer watched the defendant while she was seated in the front passenger seat of the motor vehicle. The state established that the officer had an unobstructed view of the activity inside the vehicle and that the roll of towels was in open view:

Q. Now, where were you standing?

A. Just directly behind the door on the passenger side, right side of the car.

Q. You had an unobstructed view?

A. Yes. I could see right inside.

Q. Where was her purse located?

A. Initially it was on her lap. She then placed it down on the floor. At that point she removed a roll of paper towels and attempted to stuff them [sic] down between a console and the seat of the car.

It is clear that the officer was "not required to avert his eyes from that which [was] put before him." *Cole*, 674 P.2d at 123.

■ The third and final prong of the plain view exception requires that the evidence be "clearly incriminating." This phrase has been defined as "probable cause to associate the property with criminal activity." *Kelly*, 718 P.2d at 390 (quoting *Payton v. New York*, 445 U.S. at 587, 100 S.Ct. at 1380). In the absence of "special operational necessities," nothing less than probable cause will support a search and seizure under the plain view exception. *Hicks*, 107 S.Ct. at 1153–54.

It was only after the roll of paper towels was unrolled by the arresting officer that contraband was revealed. There was nothing otherwise inherently incriminating about the object. Nor was it incriminating by virtue of its "distinctive configura-

tion." [4]

The state suggests that an otherwise innocuous object, i.e., a roll of paper towels, becomes "clearly incriminating" by virtue of an act of concealment or "furtive movement." Such movements are certainly relevant in establishing probable cause to associate an object with criminal activity. *See Sibron v. New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904–05, 20 L.Ed.2d 917 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."). Following *Sibron,* other jurisdictions have held that furtive movements or gestures alone are insufficient to constitute probable cause for search or arrest. *See, e.g., State v. Sabartinelli,* 23 Ariz.App. 436, 533 P.2d 1173, 1177 (1975); *People v. Cassel,* 23 Cal.App. 3d 715, 100 Cal.Rptr. 520, 523 (1972); *People v. Goessl,* 186 Colo. 208, 526 P.2d 664, 665 (1974); *People v. Collins,* 53 Ill.App.3d 253, 11 Ill.Dec. 399, 401, 368 N.E.2d 1007, 1009 (1977); *Commonwealth v. Concepcion,* 10 Mass.App.Ct. 613, 411 N.E.2d 477, 480 n. 2 (1980); *People v. Robinson,* 71 Mich.App. 287, 248 N.W.2d 237, 238 (1976); *State v. Braxton,* 90 N.C.App. 204, 368 S.E.2d 56, 58 (1988); *State v. Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 489, 492 (1988), *cert. denied,* ── U.S. ──, 109 S.Ct. 264, 102 L.Ed.2d 252 (1988); *State v. Flores,* 58 Or.App. 437, 648 P.2d 1328, 1330 (1982); *Smith v. State,* 542 S.W.2d 420, 422 (Tex. Crim.App.1976). *See generally* Annota-

tion, *Search & Seizure: "Furtive" Movement or Gesture as Justifying Police Search,* 45 A.L.R.3d 581 (1972).

The rationale behind this rule is articulated by the court in *People v. Superior Court of Yolo County,* 3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449 (1970):

> [F]rom the viewpoint of the observer, an innocent gesture can often be mistaken for a guilty movement. He must not only perceive the gesture accurately, he must also interpret it in accordance with the actor's true intent. But if words are not infrequently ambiguous, gestures are even more so. Many are wholly nonspecific, and can be assigned a meaning only in their context. Yet the observer may view that context quite otherwise from the actor: not only is his vantage point different, he may even have approached the scene with a preconceived notion—consciously or subconsciously—of what gestures he expected to see and what he expected them to mean. The potential for misunderstanding in such a situation is obvious.

91 Cal.Rptr. at 735, 478 P.2d at 455. Thus, other factors must be shown which, in the totality of the circumstances, would lead a reasonable and prudent person to believe that there is evidence of criminal activity.

■ All we have in this case is defendant's attempt to stuff the roll of paper towels down between the car seat and the console.[5] There is nothing else to suggest that the item was associated with criminal activity, not even a subtle connection between the item and the suspected prostitution deal. We hold that the furtive move-

---

**4.** "Distinctive configuration" is a variation of the plain view exception providing that certain containers "cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Cole,* 674 P.2d at 124 (quoting *Arkansas v. Sanders,* 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979)).

**5.** When the arresting officer asked defendant for the roll of paper towels, she denied it was hers. The state points out that if defendant's disclaimer of ownership were truly credible, she would have no legitimate expectation of privacy in the roll of paper towels and thus no standing to contest the validity of the search. *See, e.g.,*

*Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Valdez,* 689 P.2d 1334 (Utah 1984); *State v. Larocco,* 742 P.2d 89 (Utah App.1987). In making its ruling on the evidence, the trial court here necessarily determined that standing was not at issue. We note that a mere disclaimer of ownership in the context of a police query is insufficient in itself to make such an assertion. *Accord State v. Allen,* 93 Wash.2d 170, 606 P.2d 1235, 1236 (1980) (since the evidence was found on defendant's person and was to be used against him, there was no question that defendant had standing to contest the search).

ment, standing alone, was insufficient to establish the requisite probable cause to make the roll of paper towels "clearly incriminating." Since neither the plain view exception nor any other exception is available to justify the officer's search, the search is unreasonable per se.[6] Any evidence subsequently seized was inadmissible as a derivative of that illegal search and may not be used against defendant. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Harris,* 671 P.2d 175, 181 (Utah 1983).

We conclude that the trial court erred in denying defendant's motion to suppress. Defendant's conviction for attempted possession of a controlled substance is reversed, and the case is remanded to the trial court for such further proceedings as may be appropriate.

GREENWOOD, J., concurs.

BILLINGS, J., concurs in the result.

---

**6.** In view of our holding on probable cause under the clearly incriminating prong of the plain view exception, we need not examine the search under the "automobile exception" established in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *Carroll* held "a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). *See also California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (warrantless search of vehicle justified where there is probable cause, vehicle is mobile, and there is a reduced expectation of privacy); *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (police having probable cause to conduct warrantless search of a vehicle may search any container inside which may conceal object of search); *State v. Limb,* 581 P.2d 142, 144 (Utah 1978).