**STATE of Utah, Plaintiff and Respondent,**

v.

**Richard James MENKE, Defendant and Appellant.**

No. 880475–CA.

Court of Appeals of Utah.

Feb. 15, 1990.

---

Mark R. Moffat, Salt Lake City, for defendant and appellant.

John Spikes and Thomas A. Blakely (on special motion), Salt Lake City, for plaintiff and respondent.

Before BENCH, BILLINGS and ORME, JJ.

ORME, Judge:

Defendant appeals his conviction for retail theft, a class A misdemeanor, in violation of Utah Code Ann. § 76–6–602(1) (1989). The conviction was based on defendant's conditional guilty plea, entered after he unsuccessfully sought to suppress critical evidence. Defendant argues on appeal that the police officers who arrested him did not have an articulable suspicion to stop him or probable cause to search and

seize property in his possession. We affirm.

## STANDARD OF REVIEW

We begin by recognizing that "[b]ecause of the trial court's advantageous position in determining the factual basis for a motion to suppress," its underlying factual findings should not be upset unless clearly erroneous. *State v. Holmes,* 774 P.2d 506, 509 (Utah Ct.App.1989). *See also State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987). Moreover, the findings are not clearly erroneous unless they "are against the clear weight of the evidence, or [unless] the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Walker,* 743 P.2d 191, 193 (Utah 1987). *Accord State v. Sery,* 758 P.2d 935, 942 (Utah Ct.App.1988).

The trial court heard the testimony of the arresting officers and defendant and determined, on several points, that the officers' testimony was more credible than that of defendant. Nothing in the record convinces us that the trial court made a mistake in evaluating the evidence. We therefore summarize the facts as found by the trial court.

## FACTS

On August 26, 1988, at approximately 7:30 p.m., Sergeant Gilles and Officer Dalling, both Salt Lake City police officers, were patrolling the Crossroads Mall area of Salt Lake City. The officers were not on duty, but rather were moonlighting as "control officers" for Job Corps, a federal agency. The officers were traveling eastbound on First South between West Temple and Main Street. Defendant was approximately 100 feet from one of the Crossroads Mall entrances when Sergeant Gilles saw him remove a small item in a gray box from under his shirt. Sergeant Gilles thought it was a video cassette tape because of its size. Defendant paused to examine the item and then placed it in a

McDonald's sack which he then placed in an Albertson's grocery bag.

After noticing defendant's actions, the officers made a U-turn to investigate. Although they had heard no reports of any theft in the area, Sergeant Gilles suspected that defendant had shoplifted the item which he removed from under his shirt.

The officers exited their vehicle, identified themselves as police officers, and questioned defendant about his identity and his behavior. Defendant was uncooperative and refused to tell the officers what he had placed in the bag. During questioning, Sergeant Gilles asked defendant if the item in the bag was a videotape and defendant responded "yeah, it's videotapes." During this exchange, Officer Dalling was able to see into the bag and recognized that the item was not "videotapes."[1] At this point in time, Officer Dalling believed that he had probable cause to seize defendant's bag and inspect the contents, and he did so.

Officer Dalling discovered an electric razor in the gray box which had been placed in the bag. The officers questioned defendant about when and where he had acquired the razor. Defendant was unresponsive. Recognizing from the price tag that the razor was from Weinstock's, Sergeant Gilles inquired at Weinstock's whether the clerks had sold the razor to defendant. Upon receiving an answer in the negative, the officers determined that the razor had been stolen, handcuffed defendant, and transported him to jail.

Defendant filed a motion to suppress all the evidence taken from him at the time of his arrest, arguing that his Fourth Amendment rights had been violated. Having heard testimony from the officers, defendant, and several other witnesses, the court denied defendant's motion to suppress the evidence. With agreement by the prosecution and approval by the court, defendant then entered a conditional plea of guilty, specifically preserving his right to appeal

---

1. Defendant argues that Sergeant Gilles squeezed the bag before asking defendant whether the sack contained videotapes. No sub-

stantive evidence was received at trial establishing that Sergeant Gilles squeezed the bag.

the denial of his motion to suppress.[2] He was sentenced to serve nine months in the Salt Lake County Jail and to pay a fine of $2,000. Sentence was stayed pending defendant's appeal of the trial court's ruling on the motion to suppress.

Three issues are presented in this appeal. First, the state argues that defendant's initial detention did not constitute a seizure within the meaning of the Fourth Amendment. Second, defendant argues that the police officers did not have an articulable suspicion to detain and question him. Finally, defendant argues that even if the police had an articulable suspicion to detain and question him, they did not have probable cause to search his belongings.

## CONSTITUTIONAL LIMITS ON POLICE INTRUSION

As with all Fourth Amendment cases, "we must weigh the competing and often conflicting interests between the rights of individuals to be free from unnecessary harassment or arbitrary interference from law officers, and the interest of the public in being protected from crime." *State v. Trujillo*, 739 P.2d 85, 87 (Utah Ct.App. 1987). In this regard, the Utah Supreme Court has identified three distinct levels of police intrusion:

> (1) an officer may approach a citizen at [any time] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

*State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (per curiam) (quoting *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984), *cert. denied*, 476 U.S. 1142, 106

S.Ct. 2250, 90 L.Ed.2d 696 (1986)). These demarcations are easy to list but often difficult to apply. Consequently, we must not only balance the competing interests of the individual and the State but also carefully consider the facts and circumstances of each particular case. *Trujillo*, 739 P.2d at 86.

## A. SEIZURE

■ The state argues that an actual seizure of defendant did not occur in this case prior to his formal arrest. Seizure occurs "[w]hen a reasonable person, based on the totality of the circumstances, remains, not in the spirit of cooperation with the officer's investigation, but because he believes he is not free to leave." *Trujillo*, 739 P.2d at 87. The facts indicate that defendant was not in a cooperative spirit during the investigation. Moreover, it is clear that defendant did not consider himself free to leave, and in fact, was not free to leave under the circumstances. There is no merit to the argument that defendant was not "seized," prior to his arrest, within the meaning of the Fourth Amendment. On the contrary, defendant was seized from the very inception of his contact with the police officers.

## B. ARTICULABLE SUSPICION TO DETAIN AND QUESTION

■ We now turn to the argument that no reasonable and articulable suspicion existed which would validate defendant's pre-arrest seizure.

The Utah Supreme Court has noted that [w]hen a police officer sees or hears conduct which gives rise to suspicion of crime, he has not only the right but the duty to make observations and investigations to determine whether the law is being violated; and if so, to take such measures as are necessary in the enforcement of the law.

*State v. Whittenback*, 621 P.2d 103, 105 (Utah 1980) (quoting *State v. Folkes*, 565

---

**2.** "[C]onditional pleas ... when agreed to by the defendant and the prosecution and approved by the trial court, are permissible in Utah even though they are not specifically authorized by

the statutes governing the entry of pleas by criminal defendants." *State v. Sery*, 758 P.2d 935, 939 (Utah Ct.App.1988).

P.2d 1125, 1127 (Utah), *cert. denied*, 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977)). This duty, however, must be carried out within the constitutional limits first spelled out in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the United States Supreme Court recognized the constitutional viability of a non-consensual investigative stop, but emphasized that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880. *See United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). The Utah Legislature has codified this second level of police/citizen interaction:

> A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.

Utah Code Ann. § 77–7–15 (1982).

We have joined the Utah Supreme Court in emphasizing that the reasonable, articulable suspicion contemplated in § 77–7–15 must be based on objective facts suggesting that the individual may be involved in criminal activity. *Trujillo*, 739 P.2d at 88. *See State v. Carpena*, 714 P.2d 674, 675 (Utah 1986) (per curiam); *State v. Swanigan*, 699 P.2d 718, 719 (Utah 1985) (per curiam).

■ The trained law enforcement officer is in a different position than the average citizen in that he or she "may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.... The officer is entitled to assess the facts in light of his experience." *Trujillo*, 739 P.2d at 88–89. *See also State v. Sery*, 758 P.2d 935, 946 (Utah Ct.App.1988). However, the officer must be able to *articulate* what it is about those facts which leads to an inference of criminal activity. If the officer fails or is unable to do so, his suspicion is classed as a mere "hunch" rather than an articulable suspicion. *See Sokolow*, 109 S.Ct. at 1585; *Sery*, 758 P.2d at 946–47 (officer failed to articulate any particular inference to the trial court); *Trujillo*, 739 P.2d at 89–90 (officer unable to tie specific objective facts to his "hunch" of criminal conduct).

The officers in this case articulated their suspicions and identified the facts on which they were based. Sergeant Gilles pointed to three facts which led to an inference of criminal activity, i.e., shoplifting:

> First of all, the defendant is standing in front of a flower pot on—just off Main and First South, he's removing items from underneath his clothing. Secondly, [he's looking at them like he's never seen them before] and third, he's bagging them in non-retail merchandise-type sacks.

Based upon his six years as a burglary and theft investigator and eight years as a police officer in the field, he concluded that the activity was suspicious and indicative of shoplifting. Having examined the testimony and considered the facts found by the trial court, we agree that his conclusion was reasonable.

Defendant was seen by the police officers approximately 100 feet from the entrance to Crossroads Mall removing a gray box from beneath his shirt. He looked at the box in a way suggestive of a degree of unfamiliarity which is atypical for cargo so intimately stowed. He then placed the box in a McDonald's sack, although obviously not a McDonald's product, which he then placed in an Albertson's grocery bag, although there was no Albertson's store nearby. The officers were close enough to observe in some detail the nature of the box, and the type of sack and then bag into which the item was placed. Defendant's actions, although conceivably consistent with innocent—albeit highly eccentric—activity, are also strongly indicative of shoplifting, especially in such close proximity to a shopping mall. It was reasonable for the officers to investigate the suspicious activity they observed.

## CONSTITUTIONAL VALIDITY OF THE SEARCH

█ We now turn to the question of whether the officers conducted a constitutional search of defendant's grocery bag. To uphold a warrantless search requires an affirmative answer to two questions: First, was there probable cause to conduct the search? Second, assuming there was probable cause, did the search fall into one of the recognized exceptions to the warrant requirement of the Fourth Amendment? *E.g., United States v. Gooch*, 603 F.2d 122, 124 (10th Cir.1979) ("[I]t is settled that probable cause alone is not constitutionally sufficient to sustain a warrantless search unless one of several narrowly-drawn exceptions applies to a particular case.").

The parties, both at trial and on appeal, focused all but exclusively on whether probable cause existed for the search. Defendant, however, never quite conceded that no warrant was required. The state, for its part, did not definitively identify which exception it was relying upon to justify the warrantless search, although several theories were either mentioned by name or implied within its arguments.

### A. PROBABLE CAUSE

Before addressing particular exceptions which might justify the warrantless search, we first must look at whether probable cause existed so as to have justified the search. "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). In *Brinegar,* the United States Supreme Court reiterated that probable cause means

> more than bare suspicion: Probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

*Id.* at 175–76, 69 S.Ct. at 1310–11 (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)).

█ Applying the *Brinegar* analysis, Sergeant Gilles and Officer Dalling may well have had sufficient information when they first approached defendant to lead a prudent police officer to believe that defendant had probably shoplifted. Rather than arrest defendant at that juncture, they chose to question him about his activity and to elicit from him some reasonable explanation for his peculiar actions. Instead of cooperating with the officers, defendant was uncooperative and obviously lied when asked about the contents of the bags.

Courts and commentators agree that a defendant's false or evasive responses in conjunction with highly suspicious behavior may be used to determine the existence of probable cause.

> [O]fficers on patrol frequently utilize interrogation as a means to obtain more information about suspicious persons and circumstances. [Assuming the officers have grounds for the detention] the suspect's response to the interrogation may again elevate the prior suspicions up to the level of probable cause. Response to police questioning, then, frequently is an ingredient in the probable cause determination.

2 W. LaFave, Search and Seizure § 3.6(f) (2d ed.1987). Similarly, the District of Columbia Court of Appeals has observed:

> It is not too much to expect that if a legitimate reason existed for this suspicious behavior, one with innocent purpose would hasten to offer it. But when appellant elected not to do so, and instead gave the [false] response that he did, that fact may—and here we hold, did—tip the scales in favor of probable cause to believe that appellant had been attempting to [commit the crime].

*Arrington v. United States,* 311 A.2d 838, 840 (D.C.1973). *See also State v. Valenzuela,* 121 Ariz. 274, 589 P.2d 1306, 1308 (1979) (en banc) (strong odor of marijuana and obvious lie that "nothing" was in his pocket established probable cause for

search).[3]

■ We believe the reasoning in the above-cited authorities makes sense. The very purpose of level two investigations is to verify or dispel the officers' suspicions. Although a defendant may rightfully stand on his Fifth Amendment right and remain silent during such questioning,[4] the police need not ignore voluntarily offered and obviously false responses. False responses can only increase the officers' suspicions and, depending on other pertinent facts and circumstances, may elevate an articulable suspicion that the crime may have occurred to probable cause to believe that the crime has occurred.

In this case, whether or not the officers earlier had probable cause to search the shopping bag, they clearly had such cause at the time of the search, based on the totality of the circumstances including defendant's misrepresentation.

## B. EXCEPTIONS TO THE WARRANT REQUIREMENT

Given that probable cause existed for the search, we must determine whether these facts fit within one of the exceptions to the warrant requirement. "Warrantless searches are unreasonable per se unless they fall within a recognized exception to the warrant requirement of the fourth amendment." *State v. Holmes*, 774 P.2d 506, 510 (Utah Ct.App.1989). Moreover, in the case of a warrantless search, the state has the burden to show that the search was lawful. *State v. Christensen*, 676 P.2d 408, 411 (Utah 1984).

In *Christensen*, the Utah Supreme Court focused on the fact that "the State presented no evidence establishing the lawfulness of the search for, and seizure of, the [evi-

dence]." *Id.* at 411. For the state to have sustained its burden in this case, it must have presented evidence which would support at least one of the exceptions to the warrant requirement.

As indicated earlier, several exceptions were mentioned or implied during the suppression hearing and on appeal. These exceptions were those of "search incident to lawful arrest," "exigent circumstances," "stop and frisk," and "plain view." Given the facts before us, we need only discuss the "plain view" exception.

■ "The 'plain view' exception requires: (1) lawful presence of the officer; (2) evidence in plain view; and (3) evidence which is clearly incriminating." *State v. Holmes*, 774 P.2d 506, 510 (Utah Ct.App.1989). We conclude that the search was justified under this exception.

As we have already stated, the officers had a reasonable suspicion to warrant a level two investigation. Consequently, they had a lawful right to be where they were. Moreover, Officer Dalling testified that he could see directly into the bags. Although he could not see exactly what the item was, he could tell that it was not "videotapes." These facts satisfy the first and second prongs of the *Holmes* test.

Lastly, according to *Holmes*, the item must be clearly incriminating. "This phrase has been defined as 'probable cause to associate the property with criminal activity.'" *Holmes*, 774 P.2d at 510 (quoting *State v. Kelly*, 718 P.2d 385, 390 (Utah 1986)). In *Holmes*, police officers stopped a vehicle because they suspected that the occupants were making a "prostitution deal." While one officer questioned the driver of the automobile, the other officer watched the defendant in the passenger

---

3. *Valenzuela* cites additional authority from other jurisdictions which have addressed this same issue. *See* 589 P.2d at 1308.

4. We wish to emphasize that a defendant's nervous behavior may not be used to tip the scales in favor of probable cause. *See, e.g., State v. Trujillo*, 739 P.2d 85, 88 (Utah Ct.App.1987). Nor may his mere refusal to answer questions. However, though defendant was not obligated to cooperate with the officers, his failure to do so deprived him of the opportunity to address

their reasonable suspicions. Once police officers have an articulable suspicion of criminal activity, they may temporarily detain a suspect while they attempt "to verify or dispel their suspicions in a manner that [does] not exceed the limits of an investigative detention." *Florida v. Royer*, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983). Defendant's mere silence may not be used to confirm those suspicions, but a reasonable explanation may well serve to dispel them.

seat of the car. Not realizing that he was watching, she removed a roll of paper towels from her purse and stuffed it between the car seat and the console. Thinking the behavior was odd, the officer confiscated the paper towels and discovered drug paraphernalia. She was arrested on a narcotics violation but not for prostitution. This court affirmed the trial court's suppression of the evidence because there was nothing "to suggest that the item was associated with criminal activity, not even a subtle connection between the item and the suspected prostitution deal." *Id.* at 511.

Under the circumstances in this case, we believe that the non-videotape was clearly incriminating. Defendant was under investigation for shoplifting. Upon being asked whether the item in the bag was a videotape, defendant responded "yeah, it's videotapes." In *Holmes*, the item searched was entirely unrelated to defendant's detention. In this case, the item in the bag was the anticipated fruit of the suspected theft. The articulable suspicion, followed by an obvious lie concerning the object of the investigation, created probable cause to associate the item with criminal activity. Consequently, all of the criteria for the "plain view" exception were satisfied.

## CONCLUSION

Because we conclude that defendant was lawfully stopped and investigated, that probable cause existed for the search of his bag, and that the warrantless search of his bag falls within the recognized "plain view" exception, there was no error in the denial of defendant's motion to suppress. We accordingly affirm defendant's conviction.

BENCH and BILLINGS, JJ., concur.