**STATE of Utah, Plaintiff and Appellant,**

v.

**Roxanne K. CORNWALL, Defendant and Appellee.**

**No. 900302–CA.**

Court of Appeals of Utah.

April 19, 1991.

R. Paul Van Dam, State Atty. Gen. and Dan R. Larsen, Asst. Atty. Gen., argued, Salt Lake City, for plaintiff and appellant.

Loni F. DeLand, McRae & DeLand, Salt Lake City, for defendant and appellee.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

BENCH, Judge:

Defendant Roxanne Cornwall was charged with possession of controlled substances found in an administrative search as she entered a courthouse. The substances were suppressed as evidence, and the State appeals. We reverse and remand for trial.

## FACTS

In January 1987, the Third District Court of Salt Lake County adopted Administrative Order 87–1, which provides in part:

WHEREAS, in recognition by the Judges of the Third District Court of the need for improved security for the protection of members of the public, attorneys, jurors, witnesses, litigants and court personnel against violent actions or incidents occurring within the courts buildings and environs,

. . . .

All persons entering the Third District Court Building ... are subject to search for and confiscation of firearms, knives, other dangerous or potential weapons, and/or instruments, chemicals, or objects that may cause danger or injury to others, or that may disrupt the ordinary conduct of business within said court buildings. The Salt Lake County Sheriff, authorized deputies, court bailiffs, or other duly appointed peace officers may conduct said searches and confiscation by the authority granted herein. Preliminary searches shall be conducted by metal detection, x-ray screening devices, or

like instruments, however, normal hand frisking shall also be authorized.

All briefcases, baggage, luggage, packages and/or purses shall be subject to x-ray examination and/or search by said ... deputies, court bailiffs, or other duly appointed peace officers for detection and confiscation of firearms, knives, other dangerous weapons, and/or instruments, chemicals or objects that may cause danger or injury to others, or that may disrupt the ordinary conduct of business within said court buildings.

Administrative Order 87–1 has been implemented in the Third District Court by requiring all persons entering the courthouse to pass through a magnetometer [1] and lay items they carry on a conveyor belt, which passes under an x-ray machine while an officer views the x-ray image. The text of Administrative Order 87–1 is posted facing outward on the outside doors of the courthouse. Persons approaching the courthouse entry checkpoints may turn around and leave the courthouse without being searched.

Cornwall entered the courthouse on November 21, 1988 carrying a large cloth bag, and proceeded to the magnetometer and x-ray machine. The x-ray image of her bag was a dark, indistinct mass. Bailiff Lynn Huffman, who was operating the equipment, could not determine from the x-ray image whether the bag contained a weapon or dangerous object, and she thereupon began searching the bag by hand. She discovered that the bag contained two purses, and she could not see from examining the outside of the purses whether either purse contained a weapon or dangerous object. Huffman opened one of the purses and found on top of its contents a small, transparent plastic bag containing a paper bindle, which Huffman recognized as a

type of container commonly used for controlled substances. The bindle contained a white powder that proved to be cocaine. Cornwall did not expressly consent to the search of her bag, nor did she object or seek to withdraw until after the bindle was discovered, when she attempted to retrieve it and exclaimed, "I forgot that was in there."

The officers then informed Cornwall that she was not free to leave and escorted her to a more secure and private area of the building. There they continued searching the bag that Cornwall had carried into the courthouse and found a small quantity of marijuana and paraphernalia commonly used with controlled substances. The record does not indicate that a weapon or dangerous object was found. After the search was completed, another peace officer was summoned, who took Cornwall and the discovered evidence into custody.

Cornwall was charged with two counts of unlawful possession of controlled substances. She moved to suppress the evidence obtained in the search incident to her entry into the courthouse, and the district court granted her motion. The case against her was thereafter dismissed. The State has appealed, challenging only the suppression order.

## REASONABLENESS OF THE COURTHOUSE ENTRY SEARCH

 Searches performed without a warrant are, as a general rule, unreasonable and prohibited by the fourth amendment of the federal Constitution. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Arroyo*, 796 P.2d 684, 687 (Utah 1990); *State v. Ashe*, 745 P.2d 1255, 1258 (Utah 1987). [2] An exception to that general prohi-

---

**1.** A magnetometer is a device which electronically detects the presence of ferrous metals from their effect on the magnetic field surrounding the earth. "[T]he operation of the [magnetometer] requires no understanding of its theory. Its calibration is easy and its adjustment can be assured by simple visual observation." *United States v. Lopez*, 328 F.Supp. 1077, 1085–86 (E.D.N.Y.1971). No question has been

raised in this case about the operation of the magnetometer.

**2.** Cornwall has not advanced any argument, here or in the district court, based on the Utah Constitution, and we therefore do not consider the possible applicability of the Utah Constitution to this case. *See State v. Ramirez*, 159 Utah Adv.Rep. 7, 13 (Utah 1991).

bition is made for "searches conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime." *United States v. Davis*, 482 F.2d 893, 908 (9th Cir.1973). A warrantless search does not violate the fourth amendment if its scope is narrowly tailored to serve an important regulatory purpose. In *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Supreme Court determined that an administrative search was permissible under the fourth amendment "by balancing the need to search against the invasion which the search entails." 387 U.S. at 537, 87 S.Ct. at 1735; *see also United States v. Albarado*, 495 F.2d 799 (2d Cir.1974); *Commonwealth v. Harris*, 383 Mass. 655, 421 N.E.2d 447 (1981); *see generally* 4 W. LaFave, *Search and Seizure* §§ 10.6, 10.7(a) (2d ed. 1987). Thus, according to *Camara, Davis*, and similar cases, administrative searches are constitutionally permissible without a warrant if the need to search justifies an intrusion "consistent with satisfaction of the administrative need." *Davis*, 482 F.2d at 910.

■ The need for searches pursuant to Administrative Order 87–1 is described in the Order as "the need for improved security for the protection of members of the public, attorneys, jurors, witnesses, litigants and court personnel against violent actions or incidents occurring within the courts buildings and environs." Courts present a greater security risk than many other governmental institutions, in part because they often concern a relatively large concentration of people known or suspected to have violent propensities, and because disputes, including disputes involving people prone to violence, are the courts' stock in trade. Courts are thus relatively often the subject of threats of violence. *See, e.g., McMorris v. Alioto*, 567 F.2d 897 (9th Cir.1978); *Rhode Island Defense Attorneys Ass'n v. Dodd*, 463 A.2d 1370 (R.I. 1983); *Harris*, 421 N.E.2d at 448. The resulting danger of violence in court was demonstrated in the Third District Court in 1985, when a prisoner received a gun from a public visitor and shot two people, killing

one. *See State v. Gardner*, 789 P.2d 273 (Utah 1989). This incident brought home to the minds of the Third District judges the need for improved security, and after planning and study, Administrative Order 87–1 was the response. Similar requirements apply to federal courts. *See* 41 C.F.R. § 101–20.312 (1990); *Downing v. Kunzig*, 454 F.2d 1230 (6th Cir.1972) (explaining the need for federally mandated court entry searches).

■ In this case, the search of Cornwall's bag proceeded consistent with the administrative need that justified it until cocaine was discovered. Cornwall's bag was preliminarily searched by x-ray, which produced inconclusive results. Only then was her bag opened to reveal two purses inside. Huffman apparently could not determine without opening the purses whether they contained a weapon, and therefore opened one of them. Without looking further than would be necessary to discover a weapon or other instrument of potential violence, Huffman noticed on top of the inside purse's contents a clear plastic bag containing what appeared to be a controlled substance in a typical form of packaging.

Huffman's search of Cornwall's bag does not appear to have been more intrusive than necessary for court security until after a controlled substance was discovered. Cornwall's bag was opened only after its x-ray image proved to be inconclusive. Cornwall does not appear to have been treated differently from any other entrant so as to cause her special embarrassment, until an apparent controlled substance was discovered. *See Barrett v. Kunzig*, 331 F.Supp. 266, 274 (M.D.Tenn.1971) ("Because everyone carrying the enumerated parcels is required to have them inspected, the inspection is not accusatory in nature and the degree of insult to the entrant's dignity is minimal."). Cornwall also acknowledges that the text of Administrative Order 87–1 was posted on the door, and she was free to withdraw rather than undergo the search. *See United States v. Pulido-Baquerizo*, 800 F.2d 899, 902 (9th Cir.1986) (dictum that "if a potential [airline] passenger chooses to avoid a search, he must

elect not to fly before placing his baggage on the x-ray machine's conveyor belt" because "allowing [such] a passenger to leave ... would encourage airline terrorism by providing a secure exit where detection was threatened."). Posting obvious notice of the search and allowing Cornwall to walk away until there was reason to suspect her serve to minimize the intrusiveness of the entry search.[3] *See Davis*, 482 F.2d at 911–12.

■ We therefore conclude that opening Cornwall's bag and the purse inside it and removing the clear plastic bag were part of an administrative search permitted under the Fourth Amendment. For the reasons noted below, the cocaine in the plastic bag was in plain view and the marijuana was discovered as part of a search incident to an arrest, and they therefore should not have been suppressed as evidence against Cornwall.

### PLAIN VIEW

■ Besides administrative searches, an exception is also made to the fourth amendment's prohibition of unreasonable seizures for clearly incriminating objects in plain view of an officer observing from a lawful vantage point. *State v. Babbell*, 770 P.2d 987, 993 (Utah 1989); *State v. Menke*, 787 P.2d 537, 543–44 (Utah Ct.App 1990); *State v. Bartley*, 784 P.2d 1231, 1235 (Utah Ct. App.1989). As we have concluded above, Huffman observed the paper bindle from a lawful vantage point, and it was plainly visible through the transparent plastic bag that Huffman removed from Cornwall's purse as part of the administrative search.

■ The bindle was also clearly incriminating. Huffman knew from her training that such small, tightly shut paper packets are commonly used as containers for cocaine. This case thus contrasts with *State v. Holmes*, 774 P.2d 506, 510–12 (Utah Ct.

App.1989), in which the defendant stuffed a roll of paper towels between the car seat she was occupying and the console. We reversed the denial of Holmes's motion to suppress because there was nothing "to suggest that the [roll of paper towels] was associated with criminal activity." 774 P.2d at 511. However, the same is not true of Cornwall's bindle; as Huffman testified, "[W]e are trained, in our training with drugs, that that's the way people package cocaine." *Cf. United States v. Kroll*, 481 F.2d 884 (8th Cir.1973) (Opening an ordinary business envelope in an airport search violated the fourth amendment.).

### SEARCH INCIDENT TO ARREST

■ The general rule requiring a warrant for governmental searches also does not apply to a search of a person being placed under arrest and objects in that person's possession. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Banks*, 720 P.2d 1380, 1383–84 (Utah 1986); *State v. Ayala*, 762 P.2d 1107, 1111–12 (Utah Ct. App.1988). A person is under arrest for fourth amendment purposes when, under the circumstances, "a reasonable person would have believed that he was not free to leave." *Florida v. Royer*, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); *State v. Ramirez*, 159 Utah Adv. Rep. at 14. The facts in this case indicate that Cornwall was not free to leave when she was taken by the officers to a more secure part of the building and detained while the search of her bag was completed, and she does not contest the legality of that arrest. No warrant was therefore required to search her bag and seize the marijuana in it.

### CONCLUSION

The x-ray scanning and initial opening of Cornwall's bag were performed as part of

---

**3.** Huffman stated that, when performing courthouse entry searches, she is alert to the possibility of discovering controlled substances. However, her alertness in this regard did not cause the scope of the search to exceed the scope prescribed by Administrative Order 87–1, which limits the objects of the search to weapons and other instruments of potential violence. *Cf.*

*United States v. $124,570 U.S. Currency*, 873 F.2d 1240 (9th Cir.1989) (Reward system and close working relationship between airport security and customs officials so distorted the airport search as to "materially alter[ ] the calculus by which we held such warrantless searches reasonable.").

an administrative search, which, as applied, did not violate the fourth amendment. Without exceeding the scope of the administrative search, an officer discovered a bindle containing cocaine in plain view at the top of the purse's contents. A more exhaustive search of Cornwall's baggage ensued as an incident to her arrest and revealed marijuana. Since the controlled substances seized were either in plain view or discovered in a lawful search incident to arrest, the district court erred in suppressing the controlled substances as evidence against Cornwall.

The order of suppression is therefore reversed and this case is remanded for trial.

JACKSON, J., concurs.

ORME, Judge (concurring):

I concur in the court's opinion but write separately to highlight an aspect of our decision that is only implicit in the main opinion.

Just as in the context of automobile inventory searches, routinized adherence to an articulated search protocol is critical to sustaining an administrative search as reasonable. As this court recently stated in the inventory search context,

> [s]uch a procedure precludes the possibility that officers conducting inventory searches will act arbitrarily and only selectively open containers. Further, such a procedure insulates police from the claim that, in a particular case, their opening closed containers was nothing more than a "fishing expedition." It also promotes a certain equality of treatment. With a standardized, mandatory procedure, the minister's picnic basket and grandma's knitting bag are opened and inventoried right along with the biker's tool box and the gypsy's satchel.

*State v. Shamblin*, 763 P.2d 425, 428 (Utah Ct.App.1988).

In the instant case, uncontroverted testimony establishes that the bailiff conducted the magnetometer and x-ray screening and the ensuing search strictly in accordance with the established protocol. No claim is made on appeal that the bailiff deviated from the routine that is followed in all situations where the x-ray reveals "a dark, indistinct mass."

Thus, I infer that the protocol routinely followed when a container enclosing such a mass also contains other closed containers is that the other containers—or, more accurately, those large enough to contain the mass which has aroused curiousity—are immediately opened and individually inspected rather than to first individually x-ray the smaller containers.

As the main opinion observes, the bailiff "discovered that [the large bag] contained two purses, and she could not see from examining the outside of the purses whether either purse contained a weapon or dangerous object." Of course, further insight might have been gained with less intrusion had each purse been individually x-rayed as the next step. But on the record before us, that is not what the search protocol requires. Neither does the Fourth Amendment. Use of an x-ray is essentially gratuitous, an accommodation to the privacy concerns of the public and/or a convenience to those conducting the searches. So long as proper notice is posted, the Fourth Amendment is not violated at other court locations where the practice is to simply physically inspect the briefcases, bags, and purses of all persons seeking to enter the courthouse.